IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

PATRICIA FOUNTAIN,

Defendant.

CRIMINAL ACTION
NO. 12-155

## OPINION

**Slomsky, J.**                                                                **January 26, 2021**

## I.    INTRODUCTION

Defendant Patricia Fountain ("Defendant"), who is serving a 228-month sentence of incarceration, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In her Motion (Doc. No. 292), she argues that the Court should grant her compassionate release because the COVID-19 pandemic, the conditions at her prison, and her underlying health conditions place her at an increased risk of harm from the COVID-19 virus.  Defendant also contends that her release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because she has served approximately 99 months of her sentence and is a non-violent, first time offender.  The Government opposes Defendant's Motion, citing the insufficiency of COVID-19 risk factors in her medical records, the severity of Defendant's underlying offenses, Defendant's conduct while incarcerated, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities.  For reasons that follow, Defendant's Motion will be denied.

## II.     BACKGROUND

### A.     Defendant's Prior Convictions

Defendant is presently incarcerated for her role "as an organizer or leader in a deliberate and long-term sophisticated scheme to defraud the United States." (Doc. No. 293 at 14.) From 2007 to 2012, Defendant, an Internal Revenue Service ("IRS") employee, used "her knowledge of various tax credits and IRS internal auditing standards" to defraud the United States of over $2.2 million. (Id. at 1.) Defendant, along with her co-defendant husband, defrauded the United States "through the filing of false, fictitious, and fraudulent tax returns." (Id.) Defendant and her husband would submit these false, fictitious, and fraudulent tax returns after recruiting taxpayer claimants to give them personal identifying information ("PII"). (See id. at 1-2.) They would then use the PII on the false returns to claim refunds. (See id.) Defendant would keep a portion of these refunds and give the remainder to the claimants. (See id. at 2.)

In addition to submitting false, fictitious, and fraudulent tax returns on behalf of claimants, Defendant also extorted claimants that refused to "pay her a portion of the tax refund[.]" (Id.) She would threaten these claimants with "red flag[ging]" them to the IRS. (Id.) Defendant executed these threats by forging claimants' signatures on additional false filings sent to the IRS, which would cause the IRS to send the claimants a notice that they owed additional money to the IRS. (See id.)

On June 11, 2013, after a jury convicted Defendant of conspiracy to defraud the United States, filing false claims, and Hobbs Act extortion, she was sentenced to 228 months in prison. (See id.) She has served approximately 99 months of her sentence,[1] which is less than half of her

---

[1]   Defendant has served approximately 88 months of her 228-month sentence and has received approximately 11 months credit for good conduct. (See Doc. No. 293 at 3.)

total sentence, and her anticipated release date is October 11, 2029.  (See id. at 3.)  She is serving

her sentence at Alderson Federal Prison Camp ("FPC Alderson") in Alderson, West Virginia.

(See id.)  While incarcerated, Defendant has committed disciplinary infractions for fighting with

another inmate, phone abuse, and interfering with the taking of the count.  (See id.)

B.    **Defendant's Letter Motion for Compassionate Release Pursuant to 18 U.S.C.
      § 3582(c)(1)(A)(i) and the Government's Response**

On June 22, 2020, Defendant sent a request for compassionate release to the Warden at

FPC Alderson.  (See id.)  On July 1, 2020, the Warden denied Defendant's request.  (See id.)

Thereafter, on August 18, 2020, Defendant filed a letter with the Court discussing the conditions

at FPC Alderson and her health conditions and concludes with a request for her release.  (See

Doc. No. 292 at 1-2.)  The Court considers this letter a Motion for Compassionate Release

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Letter Motion").

In her Letter Motion, Defendant contends that her medical conditions, the current

COVID-19 pandemic, and FPC Alderson's allegedly inadequate response to the pandemic

"make[] it a real possibility [that she] will die . . . at [FPC] Alderson."  (Doc. No. 292 at 2.)  She

argues that she suffers from "low and . . . dangerously high" blood work levels, high serotonin

levels, obesity, an unstable gait, migraines due to adrenoleukodystrophy ("ALD"),[2] and

numerous mental health conditions, including cognitive decline, anxiety, depression, panic

attacks, and post-traumatic stress disorder ("PTSD").  (Id.)  Moreover, Defendant avers that FPC

Alderson's conditions are inadequate to confront the pandemic because, inter alia, inmates are

---

[2]    Adrenoleukodystrophy is a genetic "condition that damages the membrane . . . that insulates
       nerve cells" in a person's brain.  Mayo Clinic Staff, Adrenoleukodystrophy, Mayo Clinic,
       (Feb.           7,           2020),           https://www.mayoclinic.org/diseases-
       conditions/adrenoleukodystrophy/symptoms-causes/syc-20369157.

unable to socially distance, are not tested for COVID-19, and are not given adequate sanitation supplies.  (See id. at 1.)

On September 21, 2020, the Government filed a Response to Defendant's Motion (Doc. No. 293).  In its Response, the Government submits that none of Defendant's medical conditions are extraordinary and compelling reasons for her compassionate release and that the 18 U.S.C. § 3553(a) sentencing factors[3] also do not warrant her release.  (See id. at 12-17.)  The Government supplements its argument with a discussion on the BOP's response to the COVID-19 pandemic. (See id. at 4-8.)

First, the Government argues that Defendant's medical conditions are not extraordinary and compelling reasons for her compassionate release because they do not put her at an increased risk during the COVID-19 pandemic and they are presently under control.  (See id. at 1.)  In

---

[3]   When modifying a sentence under 18 U.S.C. § 3582(c)(1)(A), a court must consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

support of these claims, the Government argues that only Defendant's alleged obesity is a condition the Centers for Disease Control and Prevention ("CDC") lists as a risk factor if a person contracts COVID-19; however, the Government argues that Defendant is not obese because her body mass index ("BMI") does not exceed 30 kg/m$^2$.  (See id. at 13.)  Because Defendant is not obese and her other medical conditions are not COVID-19 risk factors, the Government argues that she does not present an extraordinary and compelling reason for her release.  (See id. at 14.)  Moreover, the Government notes that Defendant's medical records show her conditions are well controlled while she is incarcerated.  (See id. at 4.)

Second, the Government submits that the 18 U.S.C. § 3553(a) sentencing factors weigh against Defendant's compassionate release.  (See id. at 14.)  In support of this argument, the Government highlights Defendant's criminal conduct that resulted in her incarceration, the lengthy amount of time remaining on her sentence, and her infractions while incarcerated.  (See id. at 3, 14-15.)

Finally, the Government highlights the BOP's precautions in place to prevent the spread of COVID-19.   (See id. at 4-8.)   These precautions include the following measures: implementing social distancing, hygienic and cleaning protocols, quarantining and treating symptomatic inmates and new inmates, limiting group gatherings and inmate movement among facilities, checking staff members' temperatures daily, requiring mandatory self-reporting of symptoms, and prohibiting social visits.  (See id. at 5-7.)  The Government also notes that the Attorney General has directed the BOP to exercise discretion in placing an inmate in home confinement during the final six months or 10 percent of a sentence, whichever is shorter, if it is warranted by the totality of the circumstances.  (See id. at 7-8.)  Moreover, the Government avers

that these "efforts have been successful thus far at FPC Alderson" because it "has not reported

any positive case[s] of COVID-19[.]" [4]  (Id. at 8.)

## III.  DISCUSSION

### A.  The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been

imposed . . . ."  18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this

general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the

compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step

Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a

defendant's motion after the defendant has exhausted her administrative remedies.[5]  See §

3582(c)(1)(A)(i).  The statute provides, in part, that a court:

---

[4]  As of the filing of this Opinion, no inmates and four staff member are positive for COVID-19 at FPC Alderson.  See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Jan. 25, 2021), https://www.bop.gov/coronavirus/.  Furthermore, twelve inmates and sixteen staff members have recovered from the virus.  See id.  These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ."  Id. (emphasis omitted).

[5]  A defendant may file a motion for compassionate release directly with a district court after she "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, she "must at least ask the Bureau of Prisons (BOP) to do so on [her] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period.  See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing her Motion.  On June 22, 2020, she sent a request for compassionate release to the Warden at FPC Alderson, and the Warden denied her request on July 1, 2020.  (See Doc. No. 293 at 3.)  On August 18, 2020, over thirty days after this denial, she filed her Letter Motion seeking compassionate release (Doc. No. 292).  Because at least thirty days lapsed from the date when the Warden received

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> > (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13, n.1(A)-(C).  This Note states:

---

Defendant's request and denied it to the date when she filed her Letter Motion, she has met the exhaustion requirement.

Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)  Medical Condition of the Defendant

    (i)      The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amytrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)      The defendant is—

        (I)      suffering from a serious physical or mental condition,

        (II)      suffering from a serious functional or cognitive impairment, or

        (III)      experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family circumstances.

    (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)      The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13, n.1(A)-(C).  Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."  § 1B1.13, n.1(D).[6]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ."  United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)).  Since the Sentencing Commission has not yet amended section 1B1.14 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19."  United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)) (internal quotations omitted).  In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the

---

[6]  Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using section 1B1.13 as "helpful guidance.").

facility where the prisoner is incarcerated." <u>Somerville</u>, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." <u>Id.</u> at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. <u>See id.</u> at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

**B.      Defendant's Letter Motion for Compassionate Release Will Be Denied**

Defendant's Motion will be denied because she has not shown an extraordinary and compelling reason for her release.  Further, the relevant § 3553(a) factors weigh against a reduction or modification of her sentence.[7]  Each of these conclusions is discussed seriatim.

**1.      Defendant's Medical Conditions Do Not Present Extraordinary and Compelling Reasons for Her Release**

Defendant does not establish the required particularized vulnerability to COVID-19 and its effects to constitute an extraordinary and compelling reason for her release.  She does not show that she suffers from sufficiently serious medical conditions that place her at a uniquely high risk of illness or death if she were to contract COVID-19, even though the existence of COVID-19 at FPC Alderson may be more than merely speculative.[8]

---

[7]   Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in her sentence is also consistent with applicable policy statements of the Sentencing Commission.

[8]   Because Defendant has not shown an extraordinary and compelling reason for her release, the Court need not decide whether there is an actual, non-speculative risk of contracting COVID-19 at FPC Alderson.  The Court notes, however, that there may be an actual, non-speculative risk of contracting COVID-19 at FPC Alderson.  In its Response filed on September 21, 2020, the Government claimed that FPC Alderson had not reported any positive cases of COVID-19 "throughout the six months of this crisis."  (Doc. No. 293 at 8.)  As of the filing of this Opinion, no inmates and four staff member are positive for COVID-19 at FPC Alderson.  See COVID-19 Cases, supra note 4.  But twelve inmates and sixteen staff members have recovered from the virus.  See id.  These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ."  Id. (emphasis omitted).  Given this increase in confirmed cases among staff members, COVID-19 may be present, to a significant degree, at FPC Alderson.  However, the Court notes that the BOP has implemented

Defendant does not show that she suffers from sufficiently serious medical conditions that place her at a uniquely high risk of illness or death if she were to contract COVID-19. Defendant asserts that she suffers from "low and . . . dangerously high" blood work levels, high serotonin levels, obesity, an unstable gait, migraines due to ALD, and numerous mental health conditions, including cognitive decline, anxiety, depression, panic attacks, and PTSD.  (Doc. No. 292 at 2.)  Of these alleged conditions, the CDC has only classified obesity as a COVID-19 risk factor.[9]  See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  According to the CDC, a person is obese if her BMI is at or above 30 kg/m$^2$.  See id.

Defendant's conditions do not present the kind of vulnerability to COVID-19 necessary to justify compassionate release.  First, Defendant is not obese because her most recent BMI was 29.1 kg/m$^2$, which is below the CDC's 30 kg/m$^2$ obesity threshold.[10]  Second, even if Defendant were obese, courts routinely deny compassionate release on this ground.  See, e.g., United States

---

precautions to quarantine infected and symptomatic inmates to contain the virus's spread. (See Doc. No. 293 at 4-8.)

[9] Defendant's "low and . . . dangerously high" blood work levels may present a potential COVID-19 risk factor because the CDC lists hypertension as a potential COVID-19 risk factor.  See People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL AND PREVENTION (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Defendant, however, has not elaborated on what levels in her blood work were "low and . . . dangerously high," so the Court cannot determine whether this blood work presents a COVID-19 risk factor.

[10] Defendant's weight has fluctuated while incarcerated.  On July 26, 2020 her BMI was 29.1 kg/m$^2$, (see Doc. No. 294-2 at 44); however, from September 2018 to August 2019, her BMI ranged from 22.2 kg/m$^2$ to 23.8 kg/m$^2$.  (See Doc. No. 293 at 13.)  Application Note 1 to section 1B1.13 of the Sentencing Guideline Manual notes that a serious mental or physical condition warranting compassionate release must be one from "which . . . she is not expected to recover."  U.S.S.G. § 1B1.13, n.1(A).  Defendant's recent weight fluctuation suggests that, even if she were obese, she could recover from this condition.

v. Williams, No. 15-471, 2020 WL 4756743, at *5 (E.D. Pa. Aug. 17, 2020) (determining obesity with BMI of 31.5 $kg/m^2$ does not meet extraordinary and compelling reasons for release); United States v. Whiteman, No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release).  Finally, Defendant does not state how her litany of other medical conditions, which CDC does not list as COVID-19 risk factors, place her at a uniquely high risk of illness or death if she were to contract COVID-19.  For these reasons, Defendant's alleged obesity and other medical conditions do not establish extraordinary and compelling reasons justifying her compassionate release.[11]

## 2.    The § 3553(a) Sentencing Factors Weigh Against Defendant's Release

The relevant § 3553(a) factors also do not support either Defendant's compassionate release to home confinement or a sentence reduction.  First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See § 3553(a)(1).  Although Defendant asserts that she is "a non-violent, first time, white-collar offender[,]" (Doc. No. 292 at 2), the offenses that led to her incarceration are serious crimes.  Defendant utilized her employment with the IRS and her knowledge of tax credits and the IRS system to defraud the United States of over $2.2 million.  (See Doc. No. 293 at 1-2.)  In addition to her fraud scheme, Defendant would extort claimants who did not conform to her demands.  (See id. at 2.)  Moreover, Defendant has committed several disciplinary infractions while incarcerated, most

---

[11]   Defendant is forty-three years old.  (See Doc. No. 292 at 2.)  She does not suffer from a terminal illness or a serious cognitive impairment.  See U.S.S.G. § 1B1.13, n.1(B).  Additionally, although she states that she has "children and now grandchildren who need [her] and would love for her to come home alive[,]" (Doc. No. 292 at 2), she does not state that she is a caregiver to minor children.  See § 1B1.13, n.1(C).  Thus, these factors listed in the Sentencing Guideline Manual are not relevant here.

notably for fighting with another inmate.  (See id. at 3.)  Given these circumstances, there is no assurance that Defendant would be deterred from committing additional crimes if released.

The Court also has considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by her.  See § 3553(a)(2)(A)-(C).  Defendant has served less than half of her 228-month sentence.  (See Doc. No. 293 at 15.)  Her crimes warrant the sentence she received.[12]  For this reason, her release at this point would neither reflect the seriousness of her offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes she may commit.

Lastly, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  See § 3553(a)(6).  Defendant received a sentence within the range set by the Sentencing Guidelines, which Congress created to specifically address sentencing disparities.  To reduce Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.  Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

---

[12] In United States v. Pawlowski, the Third Circuit held the following regarding 18 U.S.C. § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

967 F.3d 327, 331 (3d Cir. 2020).

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release Pursuant to 18

U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 292) will be denied.  An appropriate Order follows.