IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICIA FOUNTAIN,<br><br>Defendant. | CRIMINAL ACTION<br>NO. 12-155-01 |

**OPINION**

**Slomsky, J.**                                                                                                    **August 29, 2023**

I.    **INTRODUCTION**

     Defendant Patricia Fountain ("Defendant"), who is 46 years old and serving a 228-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In her Motion (Doc. No. 319), she argues that the Court should grant her compassionate release for thirteen (13) reasons, which she contends are "extraordinary and compelling." (Id. at 1.) The thirteen reasons provided by Defendant are as follows: (1) the death of her youngest son in July 2020; (2) her eldest son's need for a bone marrow transplant; (3) she has a minor daughter; (4) the non-treatment in prison of her chronic medical conditions; (5) the COVID-19 pandemic and her treatment at Alderson Federal Prison Camp ("Alderson FPC"); (6) her extensive rehabilitation; (7) the death of her father and aunt; (8) the death of her sentencing Judge, Stewart Dalzell, from dementia; (9) her untreated mental health; (10) her service of over 50% of her sentence; (11) her prison being over 500 miles away from her release address; (12) she is a non-violent, minimum-security risk, minimum recidivism risk, a female, and a first-time white collar offender; and (13) the sentencing disparity between her and her codefendants, uncharged codefendants, and other similar situated individuals. (Id.) Defendant contends that these reasons warrant reducing her sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i). (Id.)

1

The Government opposes Defendant's Motion because her current motion for compassionate release is essentially based on the same grounds as her previous motion for compassionate release, which this Court denied on January 26, 2021.[1]

For reasons that follow, Defendant's Motion for Compassionate Release (Doc. No. 319) will be denied.

## II. BACKGROUND

### A. Defendant's Criminal History

Defendant is presently incarcerated for her role "as an organizer or leader in a deliberate and long-term sophisticated scheme to defraud the United States." (Doc. No. 293 at 14.) From 2007 to 2012, Defendant, an Internal Revenue Service ("IRS") employee, defrauded the United States of over $2.2 million with assistance from her husband, a co-defendant. (Id. at 1.) Defendant and her husband enlisted claimants, who would give them their personal identifying information (PII), and use their PII to file "false, fictitious, and fraudulent tax returns." (Id.) Using "her knowledge of various tax credits and IRS internal auditing standards," Defendant expected the IRS to process and honor the fraudulent tax returns. (Id. at 1-2.) After the returns were processed and honored, Defendant would keep a portion of the refunds and give the remainder to the enlisted claimants. (Id. at 2.)

In addition to submitting "false, fictitious, and fraudulent tax returns," Defendant also extorted the enlisted claimants who "did not pay her a portion of the tax refund." (Id.) She would threaten to "red flag" with the IRS those who refused to pay. (Id.) Defendant would then fulfill

---

[1] Defendant filed an appeal on October 31, 2021 of this Court's denial of her motion for compassionate release. See United States v. Fountain, No. 21-1313 (3d Cir. Oct. 13, 2021). The Third Circuit summarily affirmed the ruling of this Court. Id.

these threats by "forg[ing] the claimant's signature on an additional false filing to the IRS to "reverse" the refund that the IRS had already issued." (Id.)

In March 2013, a jury found Defendant guilty of "conspiracy to defraud the United States, filing false claims, and Hobbs Act extortion." (Id.) In June 2013, Defendant was sentenced to 228 months in prison. (Id.) She has served approximately 51 percent of her sentence at Alderson FPC. (Doc. No. 321 at 2.) On March 22, 2023, she was transferred to a United States Federal Transfer Center in Oklahoma City, Oklahoma, but is currently being held at Danbury Federal Prison Camp in Danbury, Connecticut. (Doc. No. 326 at 1.)

### B. Procedural History

On June 22, 2020, Defendant submitted a request to the Warden at Alderson FPC, which was denied. (Doc. No. 293 at 3.) Sometime thereafter, Defendant filed a letter with this Court, commenting on Alderson FPC's conditions, her health conditions, and concluding with a request for release. (Doc. No. 292 at 1-2.) This Court considered her letter a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 303 at 3.) The Motion was denied on January 26, 2021. (Id. at 15.)

As noted, on October 13, 2021, Defendant filed an appeal. (Doc. No. 21-1313.) The Court of Appeals affirmed this Court's ruling denying her compassionate release. (Id.)

### C. Defendant's Motion for Compassionate Release

On October 31, 2022, Defendant filed a new Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 319 at 1.) On January 9, 2023, she amended her Motion. (Doc. No. 320 at 1.) On June 22, 2023, she amended her Motion again. (Doc. No. 333 at 1.)

In Defendant's original motion, she alleges the thirteen (13) reasons for compassionate release which are set forth above. Defendant again stresses at length her medical condition and how it would be affected by COVID-19. (Id. at 2-5). She reports that she suffers from adrenoleukodystrophy ("ALD"), which she alleges causes her to suffer from a host of symptoms, including: migraines; peroxisomal disorder; anxiety; vitamin D deficiency; leukodystrophy; arthropathy; fluctuating weight; memory loss; vertigo; bowel issues; seizures; neuropathy; and tingling in hands, lips, and feet. (Id. at 4.) She further reports that she is pre-diabetic, has Attention-Deficit Hyperactivity Disorder (ADHD) and Post-Traumatic Stress Disorder (PTSD), and suffers from panic attacks. (Id. at 7.) Defendant also alleges that she suffers from "long COVID"[2] and claims that there are no measures in place at Alderson FPC to keep her safe from the disease. (Id. at 5-6.) Additionally, Defendant avers that her mental health, medical condition, and COVID-19 put her at an "increased risk of serious illness or death," and, thus, makes her "fear of dying in prison a real possibility." (Id. at 7-8).

In addition, in her Amended Motion (Doc. No. 320), Defendant relies on United States v. Banks, 55 F.4th 246 (3d Cir. 2022) in arguing that this Court wrongly applied "the intended loss enhancement to her sentence when the actual loss was drastically lower than suffered" and requests a "re-sentencing based on actual loss." (Id. at 1, 3.) She notes that her "base offense level was increased by 24 points because the intended loss was more than $1.5 million." (Id. at 2-3.)

---

[2] "Some people who have been infected with the virus that causes COVID-19 can experience long-term effects from their infection, known as Long COVID . . . ." Centers for Disease Control and Prevention Staff, Long COVID, Centers for Disease Control and Prevention, (June 21, 2023), https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html.

Moreover, she alleges in her Amended Motion (Doc. No. 320) that she now has multiple sclerosis ("MS")[3] and, due to the nontreatment of her ALD, she is allegedly experiencing difficulty walking, chronic pain, numbness, tingling, migraines, vertigo, blurred vision, and dizziness. (Id. at 4.) She again requests an expedited compassionate release due to her "chronic, life shortening, incurable diseases," which she argues require "specialized treatment that can[not] be provided" at Alderson FPC. (Id.)

In her Second Amended Motion (Doc. No. 333), Defendant re-alleges as reasons for compassionate release: her 10 years of incarceration served; her rehabilitation; the death of her youngest son; her eldest son's medical needs; and Judge Dalzell's death. (See id. at 2-3.) Additionally, citing a proposed amendment to § 4B1.2 of the United States Sentencing Guidelines by the United States Sentencing Commission, Defendant argues that since this amendment suggests a change to the definition of robbery and extortion under the Hobbs Act, the definition that applied to her when she was sentenced would no longer extend to her actions. (See id. at 2.) She therefore claims that compassionate release is warranted because this proposed amendment applies to her. (See id.) She also contends that she qualifies for a reduction in her sentence because of another proposed amendment by the Sentencing Commission to Guideline § 4C1.1. (See id.)

**D. The Government's Response in Opposition to Defendant's Motion**

On January 30, 2023, the Government filed a Response to Defendant's Motion. (Doc. No. 321.) In its Response, the Government submits that Defendant's "current Motion for

---

[3] Multiple Sclerosis (MS) is a "potentially disabling disease of the brain and spinal cord." Mayo Clinic Staff, Multiple Sclerosis, Mayo Clinic, (June 21, 2023), https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269#:~:text=Multiple%20sclerosis%20(MS)%20is%20a,the%20rest%20of%20your%20body.

Compassionate Release is based on virtually the same grounds as her previous request." (Id. at 2.) It further argues that Defendant's thirteen reasons are neither extraordinary nor compelling to warrant compassionate release. (Id. at 3.)

First, the Government addresses Defendant's family circumstances. (Id.) It argues that Defendant provides "no showing that her presence" at home with her family "is uniquely needed to avert dire results." (Id.) In this regard, the Government submits that Defendant's argument for compassionate release based on the fact that she has a minor daughter, her oldest son requires a BMT, and the deaths of her youngest son, father and aunt while incarcerated do not establish a basis for relief. (Id.)

Second, the Government addresses Defendant's argument for release premised on COVID-19. (Id.) It highlights the Bureau of Prison's (BOP) precautionary measures and how the BOP has "acted aggressively to mitigate the spread of COVID-19 and to treat those who are afflicted." (Id. at 3-4.) In considering Defendant's lengthy argument about the threat of COVID-19, the Government, citing the Court of Appeals discussion of COVID-19 vis à vis a prison-related context in United States v. Raia, 954 F.3d 594 (3d Cir. 2020),[4] argues that compassionate release is not warranted. (Id. at 4.) Moreover, the Government states that compassionate release should not be granted because Defendant "refused vaccination every time it [was] offered to her."[5] (Id.)

Third, the Government addresses Defendant's argument that she should be granted compassionate release because of her rehabilitation. (Id.) Citing 28 U.S.C. § 994(t), the

---

[4] In Raia, the Third Circuit stated that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." Raia, 954 F.3d at 597.

[5] Defendant was offered the COVID-19 vaccine on April 13, 2021, February 3, 2022, and November 3, 2022. (See Doc. No. 321 at 4.)

Government asserts that "[a]s a matter of law, rehabilitation alone is not grounds for compassionate release."[6] (Id.) Further, it argues that being "a first-time offender who has served more than half of her sentence" is not a basis for compassionate release. (Id.)

Fourth, the Government discusses Defendant's argument vis à vis sentencing which she included in her Amended Motion. (Id. at 5-6.) The Government submits that Defendant cannot use her compassionate release motion to "relitigate the length of [her] sentence," and that this rule also overcomes two of her other assertions: (1) she should be re-sentenced due to the death of her sentencing judge; and (2) "her sentence is disparate to those imposed on others." (Id. at 5.)

The Government, citing United States v. Folk, 954 F.3d 597 (3d Cir. 2020), argues that Defendant's claim based on United States v. Banks is "impermissible" because using a Motion for Compassionate Release to challenge a sentence is not the proper way to do so. (Id.) To buttress this argument, the Government cites an opinion from the Fifth Circuit and three non-precedential opinions from the Third Circuit which all held that a prisoner's challenge to their sentence cannot be done in a Motion for Compassionate Release.[7] (See id. at 5-6.) Additionally, in a footnote, the Government states that even if Banks were to apply here, it would not "impact the advisory guideline calculation in this case, as the actual loss in this case was $1,991,308.40…[and] the intended loss amount was $2,238,552.40 which increased her offense level by 16 levels, not 24 levels as she states in her motion." (See id. at 5.) The Government further asserts that 16 levels

---

[6] "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." (See 28 USC § 994(t)).

[7] See United States v. Escajeda, 58 F.4th 184 (5th Cir. 2023); United States v. Williams, 844 F. App'x 485, 486 n.1 (3d Cir. 2021); Burkey v. Marberry, 556 F.3d 142, 146 (3d Cir. 2009); United States v. Henderson, 858 F. App'x 466, 469 n.2 (3d Cir. 2021).

are added when the loss amount is more than $1,500,000 but less than $3,000,000, and, here, "with an actual loss of $1.9 million, she would still have an additional 16 levels added to her offense level." (Id.)

Fifth, the Government addresses Defendant's argument that she is incarcerated over 500 miles away from her residence. (See id. at 6.) It argues that her objection should be directed to the BOP as there is "an administrative process for such complaints." (Id.)

Sixth, the Government acknowledges Defendant's medical condition, but asserts it does not warrant compassionate release. (Id.) The Government augments its opposition to compassionate release with Defendant's updated medical records supplied by the BOP. (Id.) Although Defendant is being treated for migraines, ALD, depression, adjustment disorder with anxiety, neuropathy, and vitamin D deficiency, her medical records do not reflect that she "is regularly suffering debilitating ailments." (Id.) Moreover, her records show that she has only visited Health Services a few times in the past two years. (Id.) During these few visits, Defendant "did not subsequently report that [her long-COVID-19] symptoms continued." (Id.) In addition, the Government provides a summary of each medical visit and notes that these records show her conditions are well treated by the BOP. (Id. at 8-9, 11.) With regard to Defendant's assertion that she has MS, this is actually a differential diagnosis. (Id. at 10.) A differential diagnosis is a "list of possible conditions that share the same symptoms; the list is not the final diagnosis, but a theory as to what is potentially causing the symptoms. . . . MS is a potential cause for the white matter seen on the MRI." (Id. at 10-11.) Lastly, the Government notes that Defendant participates in "all normal activities of daily living (ADLs)," and that, although the BOP has always assisted Defendant with new medications, "further consultation with specialists is warranted to treat her migraines and any symptoms of ADL," which she should request. (Id. at 11-12.)

Finally, the Government states that Defendant should address her grievances vis à vis alleged inadequate medical care through the BOP's established administrative process.[8] (Id. at 12.) The Government notes that, to its knowledge, Defendant has not presented any complaints regarding this matter to the BOP. (Id.)

On June 29, 2023, the Government responded to Defendant's Second Amended Motion. (See Doc. No. 334 at 1.) The Government argues that Defendant has not raised any new claims that would support compassionate release, but rather, Defendant has only cited "a number of pending proposed amendments to the Sentencing Guidelines." (Id.) Further, many of the proposed amendments cited do not apply to her case and "need not be considered at this time as none of the amendments are currently in effect." (Id.)

Furthermore, the Government submits that Defendant does not demonstrate any grounds for compassionate release, and that even if she did, "she has only served just over half of her sentence, and the 3553(a) factors continue to warrant denial of relief." (See id. at 14.) Thus, the Government requests the Court to deny her second Motion for Compassionate Release. (Id.)

## III. DISCUSSION

### A. The Analytical Framework Regarding Motions for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A). As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's

---

[8] According to the Government, the administrative remedy process is set forth in 28 C.F.R. § 542.10 et seq.

motion after the defendant has exhausted his administrative remedies.[9]  See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction; …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States

---

[9]  A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier…." 18 U.S.C. § 3582(c)(1)(A).  In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does not respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See § 3582(c)(1)(A).

Here, it appears that Defendant has not met the exhaustion requirement before filing her Motion. Upon review of Doc. No. 318 at 191-202, Defendant filed several administrative grievances to the Warden at Alderson FPC, but none explicitly requested compassionate release. Moreover, Defendant does not mention in her initial Motion (Doc. No. 319) nor in her Amended Motion (Doc. No. 320) that she has availed herself of the administrative process. The Government's Response (Doc. No. 321) does not indicate that Defendant has sent a request for compassionate release to the Warden at Alderson FPC. But given that this Pro Se Defendant has complied with the exhaustion requirement in the past, and that her actions in this regard may still apply here, the Court will consider her new Motion for Compassionate Release as timely filed and decide it on the merits.

Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), …
> that—
> (1)  (A) Extraordinary and compelling reasons warrant the reduction; …
>
> (2)  the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)  the reduction is consistent with this policy statement

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances.  § 1B1.13 n.1(A)-(C).  This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
> (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii)  The defendant is—
>
> (I)  suffering from a serious physical or mental condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially

11

       diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

  (B) Age of the Defendant. The defendant

    (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

  (C) Family circumstances.

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1 (D).[10]

  The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are

---

[10] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 495.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa.2020) (internal quotation omitted) (quoting United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-597.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted, and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not

13

every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion will be denied because she has not demonstrated an extraordinary and compelling reason for her release. Furthermore, the relevant § 3553(a) factors weigh against a reduction or modification of her sentence.[11] Each of these conclusions is discussed seriatim.

---

[11] Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in her sentence is also consistent with applicable policy statements of the Sentencing Commission.

1. **Defendant's Family Circumstances Do Not Present Extraordinary and Compelling Reasons for Her Release**

Although the Court sympathizes with Defendant's family circumstances, Defendant does not establish extraordinary and compelling reasons to warrant compassionate release. Defendant states that she has a minor daughter, her eldest son needs a bone marrow transplant, and her youngest son, aunt, and father have all passed away. Yet, Defendant does not show how these reasons are so extraordinary and compelling to warrant her release. Defendant does not explicitly state or explain why her presence is uniquely required for her minor daughter and eldest son. Moreover, under Application Note 1 to § 1B1.13, the meaning of "extraordinary and compelling" does not extend to Defendant's family circumstances because she has not demonstrated that her minor daughter or son's caregivers are unavailable because they either died or are incapacitated. In addition, the deaths in her family also do not warrant early release. For the foregoing reasons, Defendant has not shown that her family circumstances are so extraordinary and compelling to warrant compassionate release.

2. **Defendant's Medical Conditions Do Not Present Extraordinary and Compelling Reasons for Her Release**

To begin, none of Defendant's medical conditions present an extraordinary and compelling reason for her release. Defendant states a host of physical and mental medical issues that she believes warrant compassionate release. She claims she suffers daily from a litany of medical conditions, yet this is not entirely confirmed by her medical records. What is confirmed is that she has adrenoleukodystrophy and is being treated for that condition as well as migraines, anxiety, depression, vitamin D deficiency, adjustment disorder with anxiety, and neuropathy. Her medical records also confirm that she had COVID-19 in 2021. Defendant alleges that she suffers from long-COVID, but this is not confirmed by her medical records. Additionally, she avers that she

has MS, which also is not confirmed by her records.[12]  Rather, the MRI report from October 18, 2022, provides a differential diagnosis of the white matter disease around Defendant's brain and only lists MS as a possible explanation.  (See Doc. No. 322-1 at 97.)

Defendant argues that her medical care is insufficient while incarcerated.  She submits that "[o]ne of the purposes of [her] incarceration was to receive adequate medical care, the same as if [she] was in the community, that's not happening, that's not [her] reality."  (See Doc. No. 319 at 4.)  She further submits that Alderson FPC refused to "honor [her medical] restrictions based on her diagnosis by a specialist," which "disregards [her] personal safety," and is "malpractice and detrimental to [her] health and life."  However, the BOP has both taken measures to resolve all of Defendant's medical conditions with medication and it has the intention to continue treating Defendant and addressing her health concerns.  (See Doc. No. 322-2 at 18.)[13]

Defendant also argues that Alderson FPC has not adopted appropriate measures to abate the spread of COVID-19.  This argument does not support compassionate release either.  As noted by the Government in many cases, the BOP has taken such measures.  And Defendant does not show that she suffers from sufficiently serious medical conditions that place her at a uniquely high risk of illness or death if she were contract COVID-19 again.[14]

---

[12]  Defendant's medical history log does not confirm that she has MS.  (See Doc. No. 333 at 9.)  Instead, there is a note under "Multiple Sclerosis" that says, "as reported by patient?"  (Id.)

[13]  In addition, her claim of inadequate medical treatment as a reason for compassionate release should be addressed through the BOP's established administrative process.  In United States v. Williams, 2021 WL 2400860 (W.D. Wash. June 11, 2021), the Court held that "if adequate medical care is an issue, [Defendant] can pursue available administrative means to address his issues."  Id. at *4.

[14]  Defendant is currently at Danbury FCI which is currently reporting an Operation Level of 1.  See BOP COVID-19 Statistics, FEDERAL BUREAU OF PRISONS (July 24, 2023), https://www.bop.gov/coronavirus/covid19_statistics.html.  Level 1 represents that the institution's medical isolation rate is less than 2% and the community's positive cases are less

Accordingly, Defendant has not demonstrated any extraordinary or compelling reason regarding her medical condition to warrant granting her Motion for Compassionate Release.[15]

### 3. The § 3553(a) Sentencing Factors Weigh Against Defendant's Release

The relevant § 3553(a) factors also do not support Defendant's compassionate release. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See 18 U.S.C. § 3553(a)(1). Although Defendant asserts that she is a "female, a non-violate, first time, white-collar offender" (Doc. No. 319 at 2), the offenses that led to her incarceration are serious crimes. Defendant used her employment with the IRS and her knowledge of tax credits and the IRS system to defraud the United States Government of over $2.2 million. (See Doc. No. 293 at 1-2.) Considering the foregoing, the Court is not convinced or assured that Defendant would be deterred from committing additional crimes if released.

The Court also has considered whether Defendant's release would reflect the seriousness of her offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by her. See 18 U.S.C. § 3553(a)(2)(A)-(C). Although Defendant has served approximately 51 percent of her 228-month sentence (see Doc. No. 321 at

---

than 100 per 100,000 over the last 7 days. (Id.) Moreover, the CDC announced the end of the Public Health Emergency on May 5, 2023. See End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html.

[15] Defendant turned 46 years old on May 15, 2023. (See Doc. No. 333 at 6.) She does not suffer from a terminal illness or a serious cognitive impairment, and she is not the primary caregiver to any minor children (her daughter recently turned 18 on June 22, 2023). See § 1B1.13 n.1 (A)-(C). Thus, the factors listed in the Sentencing Guidelines Manual, see § 1B1.13 n.1 (A)-(C), are not relevant here.

2), her crimes warrant the sentence she received.[16] And despite Defendant's contention that she does not "present a danger to the safety of any person or community" (Doc. No. 319 at 12), the Government believes that the "[§] 3553(a) factors continue to warrant denial of relief." (Doc. No. 321 at 14.) In any event, it is evident that her release at this point would not reflect the seriousness of her offenses, promote respect for the law, provide just punishment afford adequate deterrence, nor protect the public from further crimes she may commit.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See 18 U.S.C. § 3553(a)(6). Defendant received a sentence within the range set by the Sentencing Guidelines, which Congress created to specifically address sentencing disparities. Defendant also argues that her Motion should be granted because of the death of her sentencing judge, Judge Dalzell, and the fact that COVID-19 has made her sentence has been "harsher than Congress, the Sentencing Commission, and [Judge Dalzell] intended." (See Doc. No. 319 at 5.) However, to reduce Defendant's sentence would actually frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent

---

[16] In United States v. Pawlowski, 967 F.3d 327 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3582(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

Id. at 331.

punishment for similar offenses.[17]  Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 319) will be denied. An appropriate Order follows.

---

[17]  In her Motion, Defendant attempts to relitigate the length of her sentence. (See Doc. No. 320 at 1-3.)  She premises this argument on the death of Judge Dalzell and an alleged Sentencing Guideline miscalculation. (See Doc. No. 319 at 11.)  As noted previously, Defendant may not use a compassionate release motion to relitigate the length of her sentence and instead must raise such a claim in a § 2255 motion.